Mourns:, J.
delivered the opinion of the court.
Proceedings were instituted by plaintiff in the court below to test the validity of the election of P. A. Hebrard, as a director of the Louisiana State Bank, at an election held on the 23d of February last by the stockholders. In the progress of the cause, two other directors of the new board were drawn into the controversy, and the legality of their election 'questioned. These directors were Vignaud and Toledano. The judge below being of opinion that they could not be legally elected directors of the bank for 1841, directed an election to be held for two directors to fill their places. They appealed.
The third section of the charter of this bank provides that the board of directors shall consist of eighteen members, six to be appointed by the governor and senate, and twelve to be elected annually by the stockholders; the election by the stockholders to take place on the third Monday after the appointment by the State, provided, however, “ that no more than two thirds of the directors elected by the stockholders and not more than two thirds of the directors appointed by the governor and senate, who shall be jn [458] office at the time of an annual election, shall be elected or appointed for the next succeeding year, and no director shall hold his office more than three years out of four in succession. But the director who shall be the president at the time of an' election, may always be reappointed or re-elected, as the. case may he.”
In pursuance of this provision, the governor in January last omitted to reappoint Vignaud and Toledano, two of the six State directors then in office; in like manner the stockholders left out five of the members elected by them the preceding year, but at the same time they voted for and elected Vignaud and Toledano, the two directors omitted by the governor, and the result was that they retained in office nine members of the former board. Of the twelve directors, they elected Hebrard, who .was the last on the list, having obtained the smallest number of votes. Jordy, who came next to Hebrard in point of number of votes, contends that as under the charter the stockholders could elect only two thirds of the old directors, i. e. eight of them, Hebrard is not legally elected, and that he (Jordy) must be considered as the twelfth member elected, in order that there should be in the *646 board of 1841 four new directors chosen by the stockholders agreeably to the charter.
The decision of this controversy depends on a just interpretation of the third section of the charter above recited. It is said that the proviso in it does not consider the board of directors as one body, not more than two of which can be members of the board for an ensuing year, but as consisting-of two bodies, in each of which one third shall be left out each year, without reference to the composition of the other; that the charter has been complied with by the State and the stockholders, for they have -both left out the required number of old members; that the legislature not having inhibited in terms the election by the stockholders of the two directors omitted by the State, courts are not to infer or imply a prohibition which would restrict their power and right to select for the managment of their affairs such persons as [459] they consider most capable; and that inasmuch as by an interchange of directors between the State and the stockholders the same persons might always remain in office, the additional proviso was added that “ no' director shall hold his office more than three years out of four in succession.” This construction would, in our opinion, entirely defeat the very object of this provision, which we believe was to obtain an annual renewal of one third of the board. We do not think that the words of the proviso justify the inference, that the board is to be considered as composed of two distinct bodies, and that the prohibition to appoint more than two thirds of the old members is to be understood as applying separately to each class of directors without any reference the other ; in other words, we believe that the old members, of whom the State and stockholders are not to elect or appoint more than two thirds, are all those who were in office at the time of an annual election. If the construction contended for were adopted, it might happen, however improbable such an occurrence may appear, and no doubt is, that the State would appoint six of the directors elected the year before by the stockholders, and the latter would take up and elect the six directors not reappointed by the governor ; thus no change whatever would be made in the composition of the board, and this violation of the charter could be repeated three years in succession, for it would be only on the fourth year that in such a case the whole board would have to be renewed, which total renewal would be an evil perhaps no less great than no change at all. After providing for the annual renewal of one third of the board, it was no doubt thought that this precaution would be of no avail, if the State and stockholders could every year, without any limitation, retain in office the same directors to form the other two thirds of the board. We believe that the proviso restricting to three successive years the eligibility of the directors, was inserted with a view to prevent, that notwithstanding the annual removal of members provided for, the affairs of the corporation should constantly remain in the same hands, and under the same control. We are confirmed in this view of the subject by an [460] act passed on the 6th of March, 1819, entitled, “ an act to grant certain privileges to the Louisiana State Bank, and for other purposes.” The bank had hardly been in operation twelve months when the doubts arose which have produced this controversy, and the same legislature which had so re *647 eently passed the charter were called upon to explain their meaning; they have done so in the eighth section of the act alluded to. It declares that “ no more than four of the directors of the said hank in office at the time shall he appointed on the part of the State; nor more than eight of the directors for the year next preceding shall be chosen by the stockholders.” We understand that this act has never been accepted by the stockholders, and is therefore no part of their charter; hut it has not the less force as an enactment explanatory of the views and intentions of the lawgiver. We are therefore of opinion that although the State and the stockholders proceed separately and at different times to choose their directors, yet the hoard can be viewed hut as one body, of which two thirds only can he continued in office for the ensuing year. If Hebrard, who has the smallest number of votes of the twelve directors elected in February last, is suffered to retain his seat, there will he in the new hoard thirteen members who were in office the preceding year. But it is contended by the counsel of Hebrard that the illegal composition of the present hoard results from the circumstance that tw.o of the five members omitted by the stockholders were replaced by the two directors left out by the State; that even if the members rejected by the State for the year 1841 could be elected by the stockholders for the same year, this right of the stockholders must be subordinate to the condition of not electing so many of them as would create in the new board an excess of old members over the number of twelve. It appears to us that when the stockholders are about to re-elect the eight old directors they are permitted to retain in office, all the members of the former board, whether before elected by them or appointed by the governor, stand before them on an equal footing, and with an equal right to re-election. Their right to choose among all the old [461] members is restricted only by that proviso of the charter that “ no director shall hold his office more than three years out of four in succession.” It is not pretended that either Vignaud or Toledano have served three years in succession. But if Hebrard cannot he recognized as duly elected, it does not follow that Jordy, who comes next to him in point of number of votes, is therefore to he considered as elected. A new election must take place; such has been, we think, the universal practice and understanding in cases of this kind.
It is therefore ordered and decreed, that the judgment of the commercial court be reversed; and proceeding to give such judgment as, in our opinion, should have been rendered below, it is ordered and adjudged, that the election of P. A. Hebrard as a director of the Louisiana State Bank, made on the 33d of February last, he, and it is hereby declared null and void; the appellees paying the costs of this appeal.